# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ASHLEY DRURY,**

           **Plaintiff,**

**-vs-**                                 **Case No.  6:10-cv-1176-Orl-28DAB**

**VOLUSIA COUNTY, ROBERT PAUL TAMERIS, JECOA DUANE SIMMONS, CHRISTIN DUARTE, KEVIN SWEAT, individually and in his official capacity as Director of the Volusia County Beach Patrol, JAMES DINNEEN, in his official capacity as County Manager for Volusia County, Florida, MARY ANNE CONNORS, in her official capacity as Deputy County Manager for Volusia County, Florida, and MIKE COFFIN, in his official capacity as Director of the Volusia County Department of Public Protection,**

           **Defendants.**

_____

# ORDER

This case is before the Court on the following motions:  (1) Motion for Judgment on the Pleadings as to Counts I Through IV (Doc. 29) filed by Defendant Jecoa Duane Simmons; (2) Motion for Judgment on the Pleadings as to Counts I Through IV (Doc. 30) filed by Defendant Robert Paul Tameris[1]; (3) Amended Motion to Dismiss (Doc. 36) filed by

---

[1]Defendants Tameris and Simmons have also filed a Motion to Amend the Defendants' Affirmative Defenses Should the Court Not Find in Their Favor on Their Motion for Judgment on the Pleadings (Doc. 32).

Defendants Kevin Sweat, James Dinneen, Mary Anne Connors, Mike Coffin, and Volusia County ("the County"); and (4) Motion to Dismiss or in the Alternative Motion for More Definite Statement (Doc. 70) filed by Defendant Christin Duarte.[2]   Plaintiff has filed Responses to these motions.  (Docs. 47, 46, 50, & 72, respectively).

<u>I.  Background</u>[3]

During the summer of 2008, when she was sixteen and seventeen years old,[4] Plaintiff was employed by the Volusia County Beach Patrol ("the Beach Patrol") as a lifeguard. (Compl. ¶ 29).  Defendants Simmons and Tameris—thirty-five and forty-three years old, respectively—were Plaintiff's direct supervisors, and Defendant Duarte was introduced to Plaintiff as a "senior lifeguard"; Duarte was thirty years old at the time.  (<u>Id.</u> ¶¶ 30, 34, 37, & 39).  Defendant Sweat was the Director of the Beach Patrol during the time of the events at issue.  (<u>Id.</u> ¶ 14).

Plaintiff alleges that while she was a lifeguard, Tameris, Simmons, and Duarte "established . . . intimate relationship[s]" with her and used their positions as her superiors to foster those relationships.  (<u>Id.</u> ¶ 31).  Plaintiff further alleges that during the time she was employed by the Beach Patrol and beginning just after she reached the age of seventeen,

---

[2]Both the first and last names of this Defendant are spelled in different ways in the record, even by his own counsel.  (<u>See, e.g.</u>, Doc. 70).  In this Order, the Court has used the spelling that is given in the Complaint.

[3]The facts in the Background section are taken from the Complaint (Doc. 1).  These facts are assumed to be true at this stage of the case, but the Court makes no finding as to their veracity.

[4]Plaintiff was born on August 16, 1991 and turned seventeen on August 16, 2008. (<u>See</u> Compl. ¶¶ 28-29).

she had sexual intercourse with Tameris three times, (id. ¶¶ 34-35), and with Simmons and Duarte once each, (id. ¶¶ 37-40).  Plaintiff asserts that she did not and could not give consent to these sexual encounters because she was a minor child at the time and was therefore legally incapable of giving consent.  (Id. ¶ 42).  Additionally, consent was allegedly not possible because of a "coercive environment" that existed in the Beach Patrol; sexual encounters between senior lifeguards and underage lifeguards were "part of the culture" and "a condition for employment" at the Beach Patrol.  (Id. ¶ 43).

Plaintiff filed this lawsuit in August 2010, alleging that the Defendants—Tameris, Simmons, Duarte, Sweat, Volusia County, the County Manager, the Deputy County Manager, and the Director of the County Department of Public Protection—violated her constitutional rights and committed several state law torts.  The Complaint sets forth eleven counts, including:  three claims for constitutional violations pursuant to 42 U.S.C. § 1983 against all of the Defendants (Counts I, II, and III); one conspiracy count under 42 U.S.C. § 1985 against Defendants Tameris, Simmons, and Sweat (Count IV); one claim under 42 U.S.C. § 1986 against Defendant Sweat only (Count V); state law claims of negligent supervision (Count VI) and negligent retention (Count VII) against the County only; three state law battery claims—one each against Tameris, Simmons, and Duarte (Counts VIII, IX, and X); and one count of intentional infliction of emotional distress against Defendants Tameris, Simmons, Duarte, and Sweat (Count XI).  In the motions currently before the Court, one or more of the Defendants has raised challenges to all but the state law battery claims in Counts VIII, IX, and X.

## II.  Legal Standards

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed."  LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. Discussion

### A.  Rule 8(a)

Some of the Defendants initially argue that the Complaint does not conform to the requirement of Federal Rule of Civil Procedure 8(a) that it provide "a short and plain statement of the claim."  They contend that the Complaint is  "shotgun pleading" that is vague, conclusory, and repetitive and that it is not clear which allegations pertain to which claims.

The Complaint is not a "shotgun pleading."  It contains eleven counts in forty-one pages and provides fair notice of the claims brought against each Defendant and the basis therefor.  The Complaint complies with the requirements of Rule 8(a).

### B.  Improperly Named Defendants

Defendants Dinneen, Connors, and Griffin are sued only in their official capacities as managers and directors for Volusia County, and Defendant Sweat is sued in both his individual capacity and his official capacity.   These Defendants assert that they are improperly named in their official capacities because the County is the proper Defendant and thus naming the individuals in their official capacities is superfluous.   In her Response, Plaintiff concedes this point and acquiesces to the dismissal of these Defendants in their official capacities.  (Doc. 50 at 4).  Thus, the claims against Defendants Dinneen, Connors, and Griffin will be dismissed, and the claims against Defendant Sweat will be dismissed insofar as they are brought against him in his official capacity.

### C.  Counts I, II, and III—42 U.S.C. § 1983

In Counts I, II, and III, Plaintiff brings—pursuant to 42 U.S.C. § 1983—three claims for constitutional violations against Tameris, Simmons, Duarte, Sweat, and the County. Plaintiff contends that Tameris, Simmons, and Duarte violated several of her constitutional rights by engaging in sexual relations with her while she was a minor and while they were her supervisors at the Beach Patrol, and she contends that Sweat and the County are also liable.  In Count I, Plaintiff asserts a Fourteenth Amendment due process claim; in Count II, she asserts a Fourteenth Amendment equal protection claim; and in Count III, she asserts a Fourth Amendment unreasonable seizure claim.

### 1.  Issues Applicable to All Defendants

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." Griffin

v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).   For the most part, the Defendants do not assert that the allegations of the Complaint, if proven to be true, could support a finding of a violation of Plaintiff's constitutional rights.[5]   Indeed, courts have recognized that sexual offenses committed by state actors violate the Constitution in some circumstances.   See, e.g., United States v. Lanier, 520 U.S. 259 (1997) (case involving criminal violations of constitutional rights under 18 U.S.C. § 242 by a state court judge who sexually assaulted several women, including employees and at least one litigant); Griffin, 261 F.3d at 1303 (noting previous recognition that "a rape of a person by a state actor or official could violate the Constitution and serve as the basis for a suit under § 1983"); Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 445, 451 (5th Cir. 1994) (holding, in a case involving a yearlong sexual relationship between a high school teacher and his fifteen-year-old student, that schoolchildren "have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right" and that "surely the Constitution protects a schoolchild from physical sexual abuse").   Plaintiff has sufficiently pleaded violations of her constitutional rights.

The Defendants do challenge whether Plaintiff has sufficiently alleged that the acts at issue were committed "under color of law."   Their arguments on this point are unavailing.

"A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state.  'The dispositive issue is whether the official was

_____

[5]See section C.2. infra for arguments made by Tameris, Simmons, and Duarte.

acting pursuant to the power he/she possessed by state authority or [was] acting only as a private individual.'" Griffin, 261 F.3d at 1303 (citation omitted) (quoting Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1523 (11th Cir. 1995)). Additionally, "a defendant in a § 1983 suit acts under color of law when he abuses the position given to him by the State." Id.

The Defendants contend that the Complaint's allegations "do not rise to the level of an abuse of power" by any of the Defendants, (Doc. 36 at 12), and that Plaintiff does not allege whether the acts at issue occurred "on or off duty" or during or after work, (see Doc. 29 at 3; Doc. 30 at 3). The Defendants are incorrect; Plaintiff has alleged facts sufficient to state a claim for a deprivation of rights by someone "acting under color of state law."

Although the Eleventh Circuit has made a distinction "between those cases where a state actor directly uses his official authority to create the opportunity to sexually assault a victim and those cases where a state actor merely uses his authority to develop or facilitate a relationship of trust with the victim" and then "on his own time and wholly independent of his official duties[] commits an assault or other constitutional tort against" the victim, Griffin, 261 F.3d at 1306-07 & n.12, the allegations of the Complaint are sufficient to state a cause of action in this regard. Plaintiff has alleged, inter alia, that Simmons and Tameris were Plaintiff's direct supervisors (Compl. ¶ 30); that Duarte "was introduced to her as a senior lifeguard," (id.); that these Defendants "utilized their position as Plaintiff's superior officers to foster" intimate relationships with Plaintiff, (id. ¶ 31); that at least one sexual encounter occurred at the Main Street lifeguard tower, (id. ¶ 38); that another encounter occurred in a pick-up truck shortly after the end of a shift, (id. ¶ 40); and that the encounters "took place in a coercive environment where voluntary consent was not possible" and were "part of the

culture of the Beach Patrol and a condition for employment of Plaintiff and other minors," (id. ¶ 43).  These allegations are sufficient at the pleading stage to satisfy the "color of law" requirement.

### 2.  Simmons, Tameris, and Duarte

In their motions (Docs. 29, 30, & 70), Defendants Simmons, Tameris, and Duarte make several other arguments with regard to Counts I, II, and III.

These Defendants assert that Plaintiff has not alleged that any of them was a "policy maker."  However, whether these Defendants were "policy makers" is not relevant to their potential liability in their individual capacities for a § 1983 claim.  The "policy maker" issue pertains to municipal liability; an individual defendant can still be held individually liable for a constitutional violation even if not a policy maker.

Tameris and Simmons also argue that Plaintiff has asserted "what at best, if proven, is a state law violation." (Doc. 29 at 9; Doc. 30 at 9).  They contend that an alleged violation of a state statute—the statutory rape provision of section 794.05, Florida Statutes[6]—does not amount to a constitutional violation.  In light of the case law cited previously, this argument is rejected.  While it may be true as a general proposition that a violation of a state statute is not necessarily the equivalent of a constitutional violation, Plaintiff is not merely asserting a violation of Florida's statutory rape statute.  Instead, she has asserted an abuse

---

[6]This section provides in part that "[a] person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree." § 794.05(1), Fla. Stat.

of power by state actors at the expense of a minor.[7]

Additionally, Simmons and Tameris argue that Plaintiff does not adequately specify that the activity at issue occurred while Plaintiff was under the age of eighteen. However, the Complaint plainly states that Plaintiff was seventeen years old at the time of the events at issue. (See Compl. ¶¶ 34, 37).

Simmons and Tameris next assert that Plaintiff has "ignored Title VII and the Florida Civil Rights Act" as available remedies, instead couching her claims in constitutional terms. In the Eleventh Circuit, however, these anti-discrimination statutes are not the exclusive means for a public employee to bring a claim. See, e.g., Johnson v. City of Fort Lauderdale, 148 F.3d 1228, 1230-31 (11th Cir. 1998) (noting that "[t]he legislative history accompanying Title VII reflects congressional intent to retain, rather than preempt, § 1983 as a parallel

_____

[7]The position of Tameris and Simmons's counsel with regard to statutory rape is somewhat baffling. While at times counsel seems to recognize that consent is not possible under the law when a minor is involved, some statements in the motion papers are perplexing. For example, in a footnote in the motions, counsel for Tameris and Simmons states: "If any Defendant forced himself on the Plaintiff, it would have constituted rape. Nowhere does Plaintiff allege that she was raped, that a rape was reported or that a rape investigation occurred for an act of non-consensual sex. Apparently, these were alleged acts of consensual sex by a minor, understanding the argument of capacity to consent." (Doc. 29 at 7 n.4; Doc. 30 at 7 n.4). This sentiment is repeated later in the text of the motions: "Nowhere within the Plaintiff's complaint does Plaintiff allege that she was kidnaped or raped. Nowhere within the Complaint does Plaintiff allege that she was held against her will, was restrained or forced by [Defendant] to perform any act that she did not volunteer to participate in." (Doc. 29 at 9 (internal record citations omitted); Doc. 30 at 9 (internal record citations omitted)). Later still, counsel refers to "these allegations of allegedly consensual, but for Florida statute, sex," (Doc. 29 at 10; Doc. 30 at 10), "consensual, underage sex," (Doc. 29 at 12; Doc. 30 a 12), and "allegations of consensual sexual relations with an underage individual," (Doc. 29 at 13; Doc. 30 at 13). Further: "Plaintiff alleges that she was subjected to a violation of her Equal Protection rights because of being subjected to alleged 'sexual abuse' when in reality, at best, the Plaintiff engaged in an act of underage, voluntary sexual intercourse . . . ." (Doc. 29 at 16; Doc. 30 at 16).

remedy for unconstitutional public sector employment discrimination" and concluding "that the Civil Rights Act of 1991 did not render Title VII and § 1981 the exclusive remedies for public sector employment discrimination"). Under this controlling precedent, Plaintiff was not obligated to file suit under those statutes instead of pursuing her claims as constitutionally based.

Tameris and Simmons also cite Smith v. Citrus County, No. 5:04CV694-OC-10GRJ, 2005 WL 1065545, at *4 (M.D. Fla. May 2, 2005), for the proposition that "sexual affairs" between a supervisor and county employees are "not a matter of public concern." That case, however, is inapposite. In Smith, a former county employee alleged that he was terminated—in violation of the First Amendment—in retaliation for speaking out on matters of public concern, and he alleged that one such matter was the fact that his married supervisor had "sexual affairs" with county employees. After noting that a claim for a First Amendment violation requires an allegation of speaking on a matter of public concern, the court made the statement relied upon by Tameris and Simmons. However, the issue of whether consensual, and apparently adult, affairs are matters of public concern for free speech purposes has nothing to do with whether Plaintiff has a viable cause of action for constitutional violations in the instant case.

Additionally, Defendant Duarte incorrectly argues that Plaintiff has not sufficiently alleged that Duarte was her supervisor rather than merely a co-worker. Plaintiff has alleged that Duarte was a "senior lifeguard" thirteen years her senior and that he held a supervisory position. (Compl. ¶¶ 30, 39, 78). These allegations are sufficient to support a claim for unconstitutional abuse of power at this stage of the case.

Attacking Count III, Duarte also contends that Plaintiff's allegations that the sexual encounters amounted to an unconstitutional seizure of her person in violation of the Fourth Amendment fail to state a cause of action against him.  In her Response, Plaintiff states that "[a]lthough [Duarte's] Motion to Dismiss directed to Count III is hopelessly muddled and largely focuses on an incorrect theory, Plaintiff concedes that her Fourth Amendment claim against Duarte cannot proceed" because "[i]n contrast to Defendants Tameris and Simmons, Defendant Duarte was not a sworn law enforcement officer and did not have the authority to arrest or detain citizens."  (Doc. 72 at 9).  In light of Plaintiff's concession, Count III will be dismissed insofar as it is brought against Defendant Duarte.[8]

### 3.  The County

The County challenges the sufficiency of Plaintiff's allegations as to municipal liability in Counts I, II, and III.

"[A] municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior."  Griffin, 261 F.3d at 1307 (citing Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 663 (1978)).  "Rather, only deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability."  Id.  A plaintiff need not, however, establish a formal municipal policy in order to hold a municipality liable.  Id. at 1308.  Instead, "§ 1983 liability may be imposed

_____

[8]The Court makes no ruling at this time as to the validity of the line drawn by Plaintiff regarding law enforcement officer status and the viability of the Fourth Amendment unreasonable seizure claim.  Count III is being dismissed as against Defendant Duarte based solely on Plaintiff's agreement to such dismissal.  The other Defendants have not challenged Count III specifically, and the claim will go forward against them.

on a municipality based on 'governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'" Id. (quoting Floyd v. Waiters, 133 F.3d 786, 795 (11th Cir. 1998)).

"To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotations and citations omitted). "[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." Griffin, 261 F.3d at 1308 (quoting Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987).

Despite the County's assertions to the contrary, Plaintiff has sufficiently alleged an actionable municipal custom. Plaintiff has alleged, inter alia, that a lack of oversight by County officials "has allowed a culture of sexual abuse and depravity to take hold of the Volusia County Beach Patrol," (Compl. ¶ 45); that "[i]t is common knowledge that minors employed as lifeguards by the Volusia County Beach Patrol will be expected to have sexual intercourse with the officers and adult lifeguards," (id. ¶ 48); that "sexual abuse and coerced intercourse . . . was a regular fact of life for members of the Beach Patrol, occurring over the course of many, many years," (id. ¶ 52); that "[t]he frequent sexual encounters between underage lifeguards and senior staff were known or should have been known to" County officials, (id. ¶ 56); that "[t]he sheer volume of cases across many years and involving

-12-

multiple victims shows a reckless disregard for the well-being of minors entrusted to the Volusia County Beach Patrol," (id. ¶ 57); that "the culture of sexual abuse was common knowledge . . . among the officers and lifeguards employed by the Beach Patrol," (id. ¶ 58); that high-level County officials "had sufficient information of ongoing sexual abuse of underage lifeguards to have imposed upon them a duty to investigate and to correct the lack of oversight and the culture of abuse," (id. ¶ 61); that despite this information being commonly known in the community, County officials "took no action to correct the lack of oversight and the culture of abuse which led to Plaintiff's injuries and those of other minor children," (id. ¶ 62); and that the County "failed to develop policies or afford training for the detection and investigation of sexual abuse of minor employees and failed to protect Plaintiff from sexual abuse despite abundant evidence and actual knowledge that such abuse was regularly taking place at the Volusia County Beach Patrol," (id. ¶ 80).  Plaintiff also alleges that those responsible for making and implementing policy, including Sweat, fostered the conditions and policies, (id. ¶ 81), and that Sweat had actual knowledge of intercourse between adult lifeguards and minors but took no corrective action, (id. ¶ 82).  The Complaint contains sufficient allegations of a municipal custom to survive a motion to dismiss.

### 4.  Defendant Sweat

Defendant Sweat asserts that he is entitled to qualified immunity[9] with regard to Counts I, II, and III and that no constitutional violation by him is stated in these counts. These

---

[9]Defendants Tameris and Simmons mention qualified immunity in a footnote in their motions but do not argue entitlement to the benefit of the defense at this point.  (See Doc. 29 at 5 n.2; Doc. 30 at 5 n.3).

contentions are rejected.

"Qualified immunity protects municipal officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a motion to dismiss." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). When raised in this manner, the motion "will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" Id. (quoting Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001)).

As is the situation with municipalities, "§ 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). "However, supervisors are liable under § 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" Id. (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). "A causal connection can be established by, inter alia, 'facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so,'" id. (quoting Gonzalez, 325 F.3d at 1235), or "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). "The deprivations that constitute

widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Id.

Sweat argues that he is not alleged to have directly participated in the underlying sexual activity and that a basis for supervisory liability against him has not been sufficiently set forth.  Sweat notes that "the Plaintiff attempts to establish a causal connection by alleging widespread abuse of which Defendant Sweat either knew or should have know[n]."  (Doc. 36 at 21).  Sweat's assertion that the Complaint's allegations are insufficient to overcome qualified immunity at this stage of the case is not well-taken.[10]

Plaintiff has described widespread abuse and has set forth a factual basis for Sweat's knowledge or reason to know and his failure to take corrective action.  She has sufficiently alleged a constitutional violation by Sweat, and Sweat will not be granted qualified immunity at this stage of the case.  Cf. Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985) (reversing dismissal of § 1983 claim against supervisory official where complaint alleged that officer was responsible for police discipline and policy, that police had engaged in a pattern of using excessive force, and that officer was aware of the history of excessive force yet failed to take corrective steps).

D.  Count IV—42 U.S.C. § 1985

------

[10]Sweat asserts in part that there is a "heightened pleading requirement applicable to allegations of individual liability against a government official."  (Doc. 36 at 21 & n.9). While this used to be the law of the Eleventh Circuit, last June the Eleventh Circuit recognized that its precedent on that point has been overruled by Supreme Court jurisprudence and expressly held that heightened pleading is no longer required.  See Randall v. Scott, 610 F.3d 701, 707-10 (11th Cir. 2010) ("After Iqbal it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints.").

In Count IV of the Complaint, Plaintiff brings a conspiracy claim under 42 U.S.C. § 1985 against Defendants Tameris, Simmons, and Sweat.  Plaintiff alleges that after she contacted the Florida Department of Law Enforcement ("FDLE") in March 2009 to file a criminal complaint against Tameris, Simmons, and Duarte, Defendants Tameris, Simmons, and Sweat "conspired with each other to obstruct the investigation" and "conspired to destroy evidence and to prevent witnesses from disclosing what they knew to law enforcement officers."  (Compl. ¶¶ 120-121, 129).

Determination of the viability of this claim requires analysis of the several parts of the statutory section under which it is brought.  Section 1985, which is titled "Conspiracy to interfere with civil rights," contains three subsections.  Subsection one is titled "Preventing officer from performing duties"; subsection two is titled "Obstructing justice; intimidating party, witness, or juror"[11]; and subsection three is titled "Depriving persons of rights or

---

[11]Subsection two proscribes conspiracies whereby:

. . . two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or . . . two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . .

42 U.S.C. § 1985(2).

privileges" and also contains the remedial provision that applies to all three of the subsections.[12]  As the Supreme Court has explained, these three subsections of § 1985 contain "five classes of prohibited conspiracy"—one in subsection one and two in each of subsections two and three.  Kush v. Rutledge, 460 U.S. 719, 724 (1983).

"Three of the five broad categories, the first two and the fifth, relate to institutions and processes of the federal government—federal officers, § 1985(1); federal judicial proceedings, the first portion of § 1985(2); and federal elections, the second part of § 1985(3)." Id. "The remaining two categories, however"—the second part of § 1985(2), which "applies to conspiracies to obstruct the course of justice in state courts," and the first part of

---

[12]Subsection three proscribes conspiracies in which:

. . . two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or . . . two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; **in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising nay right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.**

42 U.S.C. § 1985(3).  The bolded portion is the remedial provision applicable to all parts of § 1985.

§ 1985(3), which pertains to "conspir[ing] or go[ing] in disguise on the highway or on the premises of another"—"encompass underlying activity that is not institutionally linked to federal interests and that is usually of primary state concern." Id. at 725.

In the Complaint, Plaintiff does not specify under which subsection of § 1985 she brings Count IV, and Defendants challenge it in their motions as if it were brought under subsection three.  Plaintiff responds that the claim is brought under subsection two, though she does not specify which part of subsection two—the first, "federal" part or the second, "state" part—she is suing under.  Identification of the correct portion of the statute forming the basis of the claim is essential because the elements of the causes of action under the different portions vary.

The allegations of the Complaint do not refer to any federal judicial proceeding, and what Plaintiff describes in Count IV is alleged interference with an investigation by the Florida Department of Law Enforcement.  Thus, it can be deduced that Plaintiff is suing under the second, "state" part of § 1985(2).[13]  However, Count IV does not state an actionable claim under this second part of § 1985(2).

The Supreme Court explained in Kush that while the three "federal" categories of § 1985 "contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws," Kush, 460 U.S. at 724-25, the "state" categories

---

[13]Indeed, the language of paragraph 131 of the Complaint—in which Plaintiff alleges that the Defendants acted "as part of a conspiracy to impede, hinder, obstruct, and defeat Plaintiff's efforts to pursue relief for violation of her constitutional rights"—tracks very closely the second part of § 1985(2), which proscribes conspiring "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice, in any State or Territory."  42 U.S.C. § 1985(2).

in the second part of § 1985(2) and the first part of § 1985(3) "contain[] language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws," id. at 725.  Plaintiff does not allege that the conspirators acted with the intent to deprive her of equal protection, and this is fatal to her claim under the second, "state" part of § 1985(2).

Plaintiff attempts to ground this claim in her underlying equal protection claim in Count II; she argues in her response papers that "she was discriminated against under the Fourteenth Amendment because she was female" and that "[i]nterference with witnesses and evidence which would be used to support a claim of gender-based discrimination is actionable under 42 U.S.C. § 1985(2)."  (Doc. 50 at 23).  The Court rejects this contention.

The fact that one of the underlying claims—the investigation of which the Defendants allegedly conspired to thwart—is an equal protection claim is not sufficient to satisfy the "intent to deny equal protection" element of a § 1985(2) claim.  To conclude otherwise would be to ignore the required focus on the intent of the conspirators, who need not have been involved in the underlying violation.  Plaintiff has not alleged that the Defendants conspired with intent to deny equal protection; she has only alleged that they conspired to cover up an alleged equal protection violation as well as the other constitutional violations she is now pursuing in this case.  Although such a cover up could have the *effect* of *thwarting pursuit of an equal protection claim*, such thwarting is not the equivalent of *an intent by the conspirators to deny equal protection*.  Absent an allegation of such an intent, a claim under the second part of § 1985(2) fails.  See Kush; Connor v. Halifax Hosp. Med. Ctr., 135 F. Supp. 2d 1198, 1212 (M.D. Fla. 2001) (noting that "[t]he state clauses of § 1985 contain

language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws," which "amounts to a requirement that the alleged conspirators be motivated by racial or other class-based invidiously discriminatory animus"); El Shahawy v. Lee, No. 95-269-CIV-T-21-B, 1996 WL 33663633, at *16 (M.D. Fla. Dec. 13, 1996) (noting that this portion of § 1985 requires allegations and proof "of a racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions"); cf. Puglise v. Cobb Cnty., 4 F. Supp. 2d 1172, 1182 (N.D. Ga. 1998) (noting that "[t]o be viable, a claim under the second clause of § 1985(2) must allege that invidiously discriminatory animus motivated the defendants" and concluding that the claim was not viable because the plaintiffs "alleged only that the defendants conspired to cover up their own allegedly illegal activities out of self-interest, an insufficient basis on which to predicate liability").  Count IV will be dismissed.

    E.  Count V–42 U.S.C. § 1986

    In Count V, Plaintiff alleges a claim under 42 U.S.C. § 1986 against Defendant Sweat only.  Section 1986, titled "Action for neglect to prevent," provides in part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case . . . .

42 U.S.C. § 1986.  "Section 1986 . . . provid[es] a remedy against individuals who share responsibility for conspiratorial wrongs under [section] 1985 by failing to make reasonable

use of their power to prevent the perpetration of such wrongs." Adickes v. S.H. Kress & Co., 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part).

"The text of § 1986 requires the existence of a § 1985 conspiracy." Park v. City of Atlanta, 120 F.3d 1157, 1160 (11th Cir. 1997); accord Hamilton v. Chaffin, 506 F.2d 904, 914 (5th Cir. 1975) (noting that because the appellant failed to state a claim under § 1985, she could "not recover under the interrelated, dependent cause of action under Section 1986"). Because as noted earlier Plaintiff has not pleaded an actionable § 1985 conspiracy, her § 1986 claim against Defendant Sweat fails as well.  Count V shall be dismissed.

### F.  Counts VI and VII—Negligent Supervision and Negligent Retention

In Counts VI and VII, Plaintiff brings claims of negligent supervision and negligent retention against the County only.  The County does not allege that these counts fail to state a cause of action, but it does assert that Plaintiff failed to comply with the notice requirements of section 768.28(6)(a), Florida Statutes, before filing these claims.

Section 768.28(6)(a) provides in part that "[a]n action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also . . . presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing." "[T]he requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action . . . ." Id. § 768.28(6)(b).  "[T]he failure of the Department of Financial Services or the appropriate agency to make final disposition of a claim within 6 months after it is filed shall be deemed a final denial of the claim." Id. §

768.28(6)(d).

The County states in its motion that Plaintiff submitted a notice of claim to the County on June 29, 2010 but that the County did not deny it in writing or respond to it in any way. Thus, argues the County, the Plaintiff prematurely filed this suit on August 6, 2010—before the claim was denied or six months had passed.  Additionally, the County asserts that Plaintiff failed to allege in the Complaint that she had complied with the notice requirements, as required by case law.  See, e.g., Wagatha v. City of Satellite Beach, 865 So. 2d 620, 621-22 (Fla. 5th DCA 2004).

In her response, Plaintiff correctly notes that failure to allege compliance with the notice requirement and failure to wait the requisite six months before filing suit are curable defects.  Such deficiencies can be remedied by amendment of the complaint or the passage of the requisite six months.  See Hattaway v. McMillian, 903 F.2d 1440, 1444-49 & n.12 (11th Cir. 1990); Fletcher v. City of Miami, 567 F. Supp. 2d 1389, 1393-94 (S.D. Fla. 2008) (dismissing claim without prejudice and with leave to amend to replead the count to allege the provision of notice); Rumler v. Fla. Dep't of Corr., 546 F. Supp. 2d 1334, 1343-1346 (M.D. Fla. 2008).  Plaintiff will be permitted to file an amended complaint alleging her compliance with the notice requirement of section 768.28(6)(a), Florida Statutes.

G.  Count XI—Intentional Infliction of Emotional Distress

In Count XI, Plaintiff brings a state law claim of intentional infliction of emotional distress ("IIED") against Defendants Tameris, Simmons, Duarte, and Sweat.  Although Tameris and Simmons do not challenge this count in their motions, Defendants Duarte and Sweat do.

-22-

"The elements of a cause of action for the intentional infliction of emotional distress are:  (1) the wrongdoer's conduct was intentional or reckless, i.e., he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, i.e., beyond all bounds of decency, atrocious[,] and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."  State Farm Mut. Auto. Ins. Co. v. Novotny, 657 So. 2d 1210, 1212 (Fla. 5th DCA 1995).  "Whether alleged conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a matter of law, not a question of fact." Gandy v. Trans World Computer Tech. Group, 787 So. 2d 116, 119 (Fla. 2d DCA 2001).

Plaintiff alleges that she has suffered emotional and psychological harm that "was completely foreseeable and was an intended consequence of . . . illegal and unconstitutional sexual acts" committed by Simmons, Tameris, and Duarte.  (Compl ¶¶ 214-215).  And, as to Sweat—who is not alleged to have committed the underlying sexual acts—Plaintiff alleges that Sweat "was aware of the illegal sexual abuse of Plaintiff and, rather than reporting those crimes to the authori[ti]es, gave advice to Tameris to assist the Defendants in hiding their crimes and to obstruct the on-going police investigation."  (Compl. ¶ 212).  She further alleges that the Defendants "acted recklessly and with complete indifference to Plaintiff's right of privacy[] and emotional and physical well-being" and that her distress was "a direct and intended consequence of the intentional and outrageous conduct of the Defendants." (Compl. ¶¶ 213, 216).

Duarte argues that allegations of "physical relations on one occasion" cannot support an IIED claim because it does not amount to "relentless verbal and physical abuse."  (Doc.

70 at 15-16).   Sweat, meanwhile, argues that his actions are not alleged to have been intentional but only "done with complete indifference" and that his conduct was not atrocious. (Doc. 36 at 25).

At least one court has found, in similar circumstances, that a claim of intentional infliction of emotional distress was stated against the person who engaged in the sexual conduct.  Cf. Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 713-14 (E.D. Pa. 2007) (finding, in case involving ten-month-long sexual relationship between seventeen-year-old high school student and her band teacher, that claim of intentional infliction of emotional distress survived summary judgment, noting in part that the plaintiff "lacked the capacity to consent to the sex").  Additionally, another court has found an IIED claim adequately stated where the defendant failed to report child sexual abuse where it was known that such abuse would continue.  See Nunnery v. Salesian Missions, Inc., No. 07-2091 (JLL), 2008 WL 1743436, at *6 (D.N.J. Apr. 15, 2008) ("To the extent Plaintiff is alleging Defendants' purposeful indifference to the safety and wellbeing of minor children, the Court will not dismiss Plaintiff's claim at this time because, construing the factual allegations in the Complaint as true, Plaintiff has arguably pled the elements required to state a claim for intentional infliction of emotional distress against the Defendants.").  Plaintiff has sufficiently pleaded her IIED claims.

## IV.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Motion for Judgment on the Pleadings as to Counts I Through IV (Doc. 29) filed by Defendant Simmons is **GRANTED in part and DENIED in part** as set forth herein.

2.  The Motion for Judgment on the Pleadings as to Counts I Through IV (Doc. 30) filed by Defendant Tameris is  **GRANTED in part and DENIED in part** as set forth herein.

3.  The Motion to Amend the Defendants' Affirmative Defenses Should the Court Not Find in Their Favor on Their Motion for Judgment on the Pleadings (Doc. 32) filed by Defendants Tameris and Simmons—which is unopposed—is **GRANTED**.

4.  The Amended Motion to Dismiss (Doc. 36) filed by Defendants Kevin Sweat, James Dinneen, Mary Anne Connors, Mike Coffin, and Volusia County is **GRANTED in part and DENIED in part** as set forth herein.

5.  The Motion to Dismiss or in the Alternative Motion for a More Definite Statement (Doc. 70) filed by Defendant Duarte is **GRANTED in part and DENIED in part** as set forth herein.

6.  The claims against Defendants Dinneen, Connors, and Coffin are **DISMISSED**, as are the claims against Defendant Sweat in his official capacity.  Additionally, Count III is **DISMISSED** as to Defendant Duarte.  Counts IV and V are **DISMISSED** altogether.  Counts VI and VII are **DISMISSED without prejudice** and with leave for Plaintiff to replead them to allege compliance with the notice requirements of section 768.28(6), Florida Statutes. **The Amended Complaint shall be filed on or before Friday, May 13, 2011**.  In the Amended Complaint, Plaintiff shall also restate or omit her other claims to conform to the rulings in this Order.

**DONE** and **ORDERED** in Orlando, Florida this 28th day of April, 2011.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record